86    133
106a  ¹582

86    133
f114a²490

## THE MECHANICS' NATIONAL BANK OF PEORIA

### *v.*

### PERRY FRAZER.

1. CONTRACT — *whether entire or divisible.* Where a debtor whose property had been seized under execution, for the purpose of releasing the levy and to procure an extension of the time of payment, agreed to give his creditor a note for a part of the debt, with a satisfactory guarantor; to pay down $1,000, and to give his individual note for the residue, payable in four months, and in pursuance thereof delivered his due-bill to the creditor for the $1,000, his note for $3,000, payable in one year, with a guaranty of a third person of its payment, and his individual note as agreed, and the creditor released his levy, but, the due-bill not being paid, and the property being seized under executions in favor of third persons, the creditor sued out another execution upon his own judgment, and caused the same to be levied on the same property, which, however, was all exhausted in payment of older liens, it was *held*, that the contract for extension was not entire in the sense that the creditor was bound to full performance before he could recover as against the guarantor.

2. If the consideration and the agreement founded upon it both consist of several parts, and a part of the consideration fails, and the appropriate part of the agreement can be apportioned to it, then they may be treated as several contracts, and a recovery may be had as to the part performed, less the damages the other party has sustained.

3. FAILURE OF CONSIDERATION — *as to guaranty.* In a suit against the

guarantor of a note, it appeared the note in question, with others of the principal debtor, was given in consideration that the payee should release certain levies under execution of the principal debtor's property, and extend the time of payment of his indebtedness. The debtor was also to pay $1,000 down, but, instead of so doing, gave his due-bill for that sum. The creditor who was the payee of the note did release his levy and had his executions returned, whereby he lost his prior lien, — but, the due-bill not being paid, caused other executions to be issued and levied on the debtor's property, not, however, until other levies had been made on the same by other parties. The property was sold and all applied on the other liens, so that the creditor derived no benefit from his second executions, and the guarantor suffered no substantial injury. It was *held*, that there was no total failure of the consideration of the guaranty, and that the failure to perform the agreement entire in such case could not defeat a recovery upon the guaranty.

4. EVIDENCE — *relevancy*. In a suit by a bank upon the guaranty of a note given by a debtor of the bank, in which a failure of consideration, both partial and total, was pleaded, it is error to admit evidence on the part of the defense that the bank was security for a county treasurer, and that county funds had been abstracted, and tending to show the connection of the bank with such transaction. It is wholly irrelevant.

APPEAL from the Circuit Court of Peoria County; the Hon. J. W. COCHRAN, Judge, presiding.

This was an action of *assumpsit* by the appellant against the appellee, upon his written guaranty upon the note of L. F. Haskins.

In addition to the facts stated in the opinion the defendant proved by R. G. Ingersoll that the bank had through its officers become security for one Shaver, who was county treasurer; that Shaver had something to do with a man named Wood, and Wood had something to do with L. F. Haskins, and the money of the county passed round through the hands of Shaver to these other parties, and that he did act in that matter, as he understood, for the bank. The following question was propounded to the witness:

"State whether there was at that time any business transacted by you and McCune in reference to obtaining securities from Wood for liability of Shaver to the bank?"

This question, and all evidence in regard to business between Wood, Shaver, and the bank, was objected to by the

plaintiff; but the court overruled the objection and the plaintiff excepted.

The witness then testified: " Shaver was county treasurer.  A lot of money was missing.  The bank, or some of its officers, were Shaver's securities.  It was claimed that the money was stolen by Haskins — some of them claimed by Wood.  Wood laid it to Haskins, and Haskins to Wood.  The object of the bank was to get all they could from Haskins, Wood, and Shaver.  Wood had some interest in the distillery.  Darst employed us to get possession of that."

Messrs. Hopkins & Morrow and Mr. J. S. Starr, for the appellant.

Mr. D. McCulloch, for the appellee.

Mr. Justice Craig delivered the opinion of the Court:

This was an action of *assumpsit,* brought by the Mechanics' National Bank of Peoria against Perry Frazer as guarantor of a promissory note which was as follows:

" $3,000.                    *Peoria, March, 31, 1870.*

" One year after date I promise to pay the Mechanics' National Bank of Peoria, Illinois, or order, three thousand dollars, with interest at ten per cent per annum from date until paid, for value received.

" L. F. Haskins."

On the back of the note appeared the following:

" For value received I guarantee the within note at maturity.

" Perry Frazer."

Several special pleas were filed by the defendant, upon which issue was taken ; but it will not be necessary to make any particular reference to them, as the defense relied upon may be stated in a few words, as follows :  " That the note with the guaranty written thereon was delivered without authority ; that there was no consideration for the guaranty, and that the consideration for which the note was given, as

well as that of the guaranty, has failed in whole and in part.'' In substance these were the issues upon which a trial was had before a jury, resulting in a verdict and judgment in favor of the defendant.

It appears from the evidence that the note and guaranty were executed under the following circumstances:

In the fall of 1869 appellant obtained two judgments against Haskins, who was engaged in the wholesale liquor and rectifying business. In the spring of 1870 there was due upon these judgments about the sum of $7,085, and executions were issued and levied upon a large amount of property owned by Haskins. In the meantime, it appears, Haskins had become heavily involved. The government had claims for unpaid revenue taxes, executions in favor of other parties were in the hands of the officer for collection, and on account of the seizure of his property his business was entirely suspended.

In March, 1870, Haskins, and Ingersoll & McCune, his attorneys, in connection with a portion of Haskins' creditors who were not secured, undertook to consummate an arrangement by which Haskins should obtain an extension of time from his creditors in which to pay the several claims, and a release of his property from the liens then upon it. About March 31st an arrangement seems to have been consummated with appellant that Haskins should pay it $1,000 cash, and give a note, due in one year, for $3,000, with a satisfactory guarantor, and give his individual note for $3,085, the balance of the claim, due in four months, and that appellant should give an extension of time, and release Haskins' property from the levies under the executions.

On April 25th Haskins' attorneys delivered appellant the note in question, guaranteed by appellee, Haskins' individual note for $3,085 due in four months, and a due-bill for $1,000 in lieu of cash, and appellant signed an order directing the sheriff to release Haskins' property from the levy, which was done, and the property delivered into Haskins' possession, and subsequently the executions were returned.

The due-bill given by Haskins not having been paid as it was understood it would be, on May 14th executions were issued on the two judgments, for the purpose of collecting this amount from Haskins, when, on May 16th, Ingersoll & McCune guaranteed the payment of the due-bill in thirty days. The executions were not, however, returned, but seem to have been held in the sheriff's hands as a protection to Ingersoll & McCune. These executions were finally levied upon Haskins' property, but before they were issued the property had become subject to older liens, upon which it was, in August following, sold; but all the proceeds were exhausted in the payment of prior liens, and nothing was realized on appellant's two executions.

Under these circumstances it was contended by appellee that appellant could not recover as against the guarantor, for the reason it had not observed the agreement to extend the time of payment under which the note was guaranteed by him; in other words, the agreement to release Haskins' property from the levies and extend the time of payment was indivisible, and appellant was bound to a full performance before he could recover, although nothing was made by appellant out of Haskins' property under the last levies. In support of this view, at the request of appellee, the court gave the following instruction to the jury:

" If the jury believe from the evidence that the note sued on in this case was given for a part of the indebtedness included in the judgment in favor of Smith & Horn, offered in evidence, and that the defendant's indorsement thereof was made in consideration of an agreement made by the plaintiff, or any person acting by its authority or with its assent, with him, the defendant, to release the levy under the executions offered in evidence, issued upon the judgments confessed, and to extend the time for the payment of all Haskins' indebtedness to itself, except one thousand dollars, and to stay proceedings upon said judgments for a certain time, and for no other or different consideration; and if the jury further believe from the evidence that, after

the delivery of said indorsement or guaranty, said plaintiff, or any one by its authority, procurement, or permission, caused executions to be issued upon said judgments, and the property of said Haskins to be seized by virtue thereof, and this prevented him from going on with his business for said time, these facts constitute a good defense under the pleadings in this case, and the jury should find for the defendant."

At the same time, the court refused instructions asked by appellant which in substance announced the doctrine that, if the consideration for the guaranty was that appellant agreed to release the levy of its executions, and give up the property to Haskins and extend his indebtedness a definite time, and appellant did release the property as agreed, and extended the indebtedness for a part of the stipulated time, but before the time expired other creditors seized Haskins' property, if then appellant caused or permitted execution to be levied upon the property, the proceeds of which were exhausted by prior executions, such facts did not constitute a total failure of consideration, but only a partial failure, and only a defense to the action to the extent of the actual damages sustained by appellant's levy.

We do not regard the contract under which appellee executed the guaranty as an entire contract in the sense insisted upon by appellee, nor do we believe the construction placed upon it by the court to be the correct one.    The note was given for an indebtedness appellant had against Haskins which had been reduced to judgment.    At the time, appellant had levied upon Haskins' property, and the judgment was well secured.    Appellee agreed to guarantee the note in question if appellant would release the levies, give up the property, and extend the time of payment.    To hold, therefore, after appellant had given up the property, because it failed to abide by the contract in a slight particular which was no benefit to the bank and substantially no detriment to Haskins, would defeat entirely a recovery upon the guaranty, is neither equitable nor is the position sanctioned by the authorities.    If the consideration for the guaranty had

wholly failed, then no recovery could be had. If, on the other hand, it had failed in part, to the extent of the failure, only, could a defense be made. Suppose Haskins had purchased of appellant $3,000 worth of government bonds, to be delivered in six months, and had given the note guaranteed by appellee in payment of the bonds. At the appointed time appellant delivers one-half of the bonds agreed upon, but fails for some reason to deliver the balance. We apprehend an action would lie as against the guarantor to recover for the bonds delivered, less such damages as Haskins may have sustained on account of the failure of the bank to deliver the entire amount of bonds agreed upon. And yet there is no substantial difference in principle between the supposed case and the question here involved, as will be apparent from the authorities. Parsons, in his work on Contracts, volume 1, page 463, 5th edition, says: " If the consideration and agreement founded upon it both consisted of several parts, and a part of the consideration failed, and the appropriate part of the agreement could be apportioned to it, then they might be treated as several contracts, and a recovery of money paid be had accordingly. It is often difficult to say whether a consideration is divisible and capable of apportionment, or so entire that it must stand or fall together. Perhaps no better rule can be given than that, if the thing to be done be in its own nature separable and divisible, and there be no express stipulation or necessary implication which makes it absolutely one thing, and that part which fails may be regarded, to use the language of the court in one case, not as a condition going to the essence of the contract, in such case the failure does not destroy the rights growing out of the performance of the residue. But the other party may have his claim or action for damages arising from such failure."

The same doctrine is announced in *Parrish* v. *Stone*, 22 Pick. 198, where it is said: " The rule to be deduced from the cases seems to be this, that, where the note is not given upon any one consideration, which, whether good or not,

whether it fail or not, goes to the whole note at the time it is made, but for two distinct and independent considerations, each going to a distinct portion of the note, and one is a consideration which the law deems valid and sufficient to support a contract, and the other not, then the contract shall be apportioned, and the holder shall recover to the extent of the valid consideration, and no further."

In *Jones* v. *Buffum*, 50 Ill. 277, which was an action upon a promissory note, under a plea of partial failure of consideration, it was held that it was competent for defendant to show that the note was given in part for real estate and in part for improvements which were to be made thereon by the vendor, but which were not made ; and their value is the extent of the failure of consideration. In the case last cited the question here involved was not raised, but the principle announced is in harmony with the law as declared in Parsons, *supra*. We are, therefore, of opinion the court erred in giving appellee's second instruction and others of a like character.

There is another branch of the case in which we can not sustain the rulings of the circuit court. It was contended by appellee that Ingersoll & McCune were attorneys for appellant, and the bank was bound by what the attorneys did in negotiating with appellee to guarantee the note. The testimony, in our judgment, did not warrant the inference that they were acting for the bank, but they were the attorneys of Haskins. But, even if Ingersoll & McCune had acted for the bank, the testimony which was admitted in regard to Shaver, county treasurer, and Wood, who obtained the money, and the connection of the bank with that transaction, had no bearing whatever upon the issues in this case, and it was error to allow it to go to the jury. The testimony was of such a character that it could not fail to prejudice appellant's case in the minds of the jury. For the errors indicated the judgment will be reversed and the cause remanded.

*Judgment reversed.*